UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW and DIONNE O'NEAL,<br><br>                Plaintiffs,<br><br>   v.<br><br>DEBORAH E. SCOTT in her official capacity as Director of Missouri Department of Social Services, JANEL R. LUCK, in her official capacity as Director of Family Support Division, Missouri Department of Social Services, KANSAS CITY BOARD OF ELECTION COMMISSIONERS and MELODIE A. POWELL, JOSEPH D. SERRANO, CYNTHIA THOMPSON, QUENTIN JENNINGS, SHAWN L. KIEFFER, and SHELLEY McTHOMAS in their official capacities as members of the Kansas City Board of Election Commissioners, JACKSON COUNTY BOARD OF ELECTION COMMISSIONERS and TAMMY L. BROWN, WILLIAM J. BAKER, MICHAEL K. WHITEHEAD, CHARLES E. DUMSKY, CHARLENE DAVIS, and ROBERT C. NICHOLS, JR. in their official capacities as members of the Jackson County Board of Election Commissioners, ST. LOUIS CITY BOARD OF ELECTION COMMISSIONERS and SCOTT LEIENDECKER, MARY WHEELER-JONES, CAROL A. WILSON, EILEEN M. McCANN, JACK LARY, and CLARENCE E. DULA in their official capacities as members of the St. Louis City Board of Election Commissioners,<br>                Defendants. | CIVIL ACTION NO.<br><br>**COMPLAINT** |

      Plaintiffs Association of Community Organizations for Reform Now ("ACORN") and Dionne O'Neal, through their undersigned counsel, for their Complaint against Defendants Deborah E. Scott, Director of Missouri Department of Social Services, Janel R. Luck, Director of Family Support Division, Missouri Department of Social Services,

Kansas City Board of Election Commissioners and its members Melodie A. Powell, Joseph D. Serrano, Cynthia Thompson, Quentin Jennings, Shawn L. Kieffer, and Shelley McThomas, Jackson County Board of Election Commissioners and its members Tammy L. Brown, William J. Baker, Michael K. Whitehead, Charles E. Dumsky, Charlene Davis, and Robert C. Nichols, Jr., St. Louis City Board of Election Commissioners and Scott Leiendecker, Mary Wheeler-Jones, Carol A. Wilson, Eileen M. McCann, Jack Lary, and Clarence E. Dula, all sued herein in their official capacities, allege upon knowledge as to their own conduct and information and belief as to the conduct of others.

## **Introduction**

1. This action seeks declaratory and injunctive relief to redress past and ongoing violations of the obligations imposed by Section 7 of the National Voter Registration Act of 1993 (the "NVRA"), 42 U.S.C. § 1973gg-5, for voter registration by public assistance agencies in Missouri.

2. Section 7 of the NVRA mandates that all offices in a state that provide public assistance must distribute voter registration application forms, assist applicants in completing the forms, and accept completed voter registration application forms.

3. Section 7 further requires all public assistance offices to distribute voter registration materials with each application, recertification, renewal or change of address relating to an applicant's receipt of public assistance.

4. Pursuant to the federal law, the public assistance agencies must also inquire of every applicant, in writing, whether he or she would like to register to vote or change his or her voter registration address and advise every applicant in writing that the
2

decision whether to register to vote will not affect the applicant's eligibility for benefits or the amount of benefits available.

5. The requirements of Section 7 reflect Congress's objective to increase the number of eligible citizens who register to vote in federal elections, and to ensure the registration of "the poor and persons with disabilities who do not have driver's licenses and will not come into contact with the other principal place to register under this Act [motor vehicle agencies]." 42 U.S.C. § 1973gg (b) (1); NVRA Conference Report (H.Rept. 103-66).

6. Despite these clear obligations under the NVRA, Missouri's public assistance offices routinely fail to provide the required voter registration opportunities to persons seeking public assistance or engaging in other covered transactions, leaving thousands of low-income citizens in Missouri, including the individual Plaintiff, and ACORN members, unregistered and effectively deprived of a voice in government.

7. Defendants are state and local officials responsible for Missouri's compliance under Section 7 of the NVRA. They have failed to fulfill their federally-required responsibilities for coordinating and implementing voter registration opportunities for individuals seeking services through offices of the Department of Social Services ("DSS") which is a public assistance agency as defined by Section 7 of the NVRA.

8. As the result of these ongoing violations, Plaintiff O'Neal, and numerous ACORN members have been denied the opportunity to register to vote, thereby depriving them of exercising their rights to vote and of a voice in government.

3

Case 2:08-cv-04084-NKL    Document 1    Filed 04/23/08    Page 3 of 18

9. As the result of these ongoing violations, Plaintiff ACORN and its members have been forced to devote a significant portion of their limited time and resources to conducting voter registration outreach to the clients of Missouri's public assistance agencies. But for the conduct of the Defendants and their violation of the NVRA, Plaintiff ACORN and its members would not have spent these resources conducting these particular voter registration activities.

10. Defendants' violations thus have hampered and impeded ACORN's mission and have diverted resources needed for full achievement of its goals. More than 100,000 eligible low-income voters in Missouri remain unregistered and effectively disenfranchised as the result of the Defendants' actions and inactions. In fact, analysis of data collected by the U.S. Census indicates that more than 250,000 adult citizens in households making less than $25,000 a year in Missouri were unregistered in November 2006.

## Parties

11. Plaintiff ACORN is a not-for-profit organization, incorporated in Arkansas with Missouri-based offices in Kansas City and St. Louis. ACORN is the nation's largest community organization of low and moderate-income families, working together for social justice and stronger communities. Since 1970, ACORN has grown to more than 175,000 member families, organized in 850 member chapters in 75 cities across the United States and other countries, including more than 13,396 members in its two Missouri chapters. ACORN members participate in local meetings, actively work on public policy campaigns, and elect their own leaders from their neighborhoods. ACORN's membership includes persons who are eligible for public assistance and

4

eligible to vote but are unregistered or need to update their registrations because they have moved.

12. Plaintiff O'Neal is a St. Louis resident, who currently is receiving public assistance benefits in the form of Food Stamps and has been eligible for these benefits since 1993. She meets all of the qualifications to register, but is not registered to vote where she currently resides. Plaintiff O'Neal is an ACORN member.

13. Defendant Scott, the Director of Missouri's Department of Social Services ("DSS"), is sued in her official capacity. DSS is the state agency responsible for administration of many public assistance programs in Missouri covered by the NVRA, including Food Stamps, Medicaid, MO HealthNet and Temporary Assistance for Needy Families ("TANF").

14. Defendant Luck, the Director of the Family Support Division ("FSD") of the Missouri DSS, is sued in her official capacity. FSD administers the three local federal assistance programs - Food Stamps, Medicaid, and TANF – through offices located in each county and the city of St. Louis. Defendant Luck, its Director, is the chief administrative officer whose duty is to personally investigate the conduct of the various bureaus of FSD and to control the administration of the federal assistance programs in offices throughout the state.

15. Defendant Kansas City Board of Election Commissioners ("BOE") is the designated elections authority for the jurisdiction of the city of Kansas City, within Jackson County, Missouri. It is responsible for supervising the registration of voters within its jurisdiction and for directing the activities of all deputy registration officials that it may appoint. Its duties include instructing and directing deputy registration

officials, including voter registration agencies under the NVRA, in the performance of their duties, and to supply them with the proper registration forms. It also is required to retain all voter registration records and registration list records for a minimum of two years and to compile data from the records necessary for NVRA compliance.

16.     Defendants Melodie A. Powell, Joseph D. Serrano, Cynthia Thompson, and Quentin Jennings are members, and Shawn L. Kieffer and Shelley McThomas are directors, of the Kansas City Board of Election Commissioners. They are being sued herein in their official capacities.

17.     Defendant Jackson County Board of Election Commissioners ("BOE") is the designated elections authority for the jurisdiction of Jackson County outside the city of Kansas City, Missouri. It is responsible for supervising the registration of voters within its jurisdiction and for directing the activities of all deputy registration officials that it may appoint. Its duties include instructing and directing deputy registration officials, including voter registration agencies under the NVRA, in the performance of their duties, and to supply them with the proper registration forms. It also is required to retain all voter registration records and registration list records for a minimum of two years and to compile data from the records necessary for NVRA compliance.

18.     Defendants Tammy L. Brown, William J. Baker, Michael K. Whitehead, and Charles E. Dumsky are members, and Charlene Davis, and Robert C. Nichols, Jr. are directors, of the Jackson County Board of Election Commissioners. They are being sued herein in their official capacities.

19.     Defendant St. Louis City Board of Election Commissioners ("BOE") is the designated elections authority for the jurisdiction of the city of St. Louis, Missouri. It

is responsible for supervising the registration of voters within its jurisdiction and for directing the activities of all deputy registration officials that it may appoint. Its duties include instructing and directing deputy registration officials, including voter registration agencies under the NVRA, in the performance of their duties, and to supply them with the proper registration forms. It also is required to retain all voter registration records and registration list records for a minimum of two years and to compile data from the records necessary for NVRA compliance.

20. Defendants Scott Leiendecker and Mary Wheeler-Jones are directors, and Carol A. Wilson, Eileen M. McCann, Jack Lary, and Clarence E. Dula are members of the St. Louis City Board of Election Commissioners. They are being sued herein in their official capacities.

## Jurisdiction and Venue

21. This case arises under the NVRA, a law of the United States. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

22. This Court has jurisdiction to grant both declaratory and injunctive relief under 42 U.S.C. § 1973gg-9(B)(2), 28 U.S.C. §§ 2201 and 2202.

23. This Court has personal jurisdiction over each of the Defendants because each is a citizen of the State of Missouri.

24. Venue in this district is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this district.

7

## Factual Allegations

## National Voter Registration Act of 1993

25. The NVRA, 42 U.S.C. §1973gg et seq., has the purpose of "establish[ing] procedures that will increase the number of eligible citizens who register to vote in elections for Federal office."

26. In furtherance of that goal, the NVRA mandates that "each state shall designate as voter registration agencies -- (A) all offices in the state that provide public assistance." 42 U.S.C. § 1973gg-5. The DSS is such a mandatory voter registration agency.

27. The NVRA requires that "the following services shall be made available" at every public assistance agency:

   (i)   Distribution of mail voter registration application forms;

   (ii)  Assistance to applicants in completing voter registration application forms, unless the applicant refuses such assistance; and

   (iii) Acceptance of completed voter registration application forms for transmittal to the appropriate State election official.

   42 U.S.C § 1973gg-5.

28. The NVRA also requires that a voter registration agency that provides public assistance services distribute with each application for service, and with each renewal or change of address form, a mail-in voter registration application form. Each such voter registration agency must also provide a form for clients to complete, asking whether he or she would like to register to vote and advising that the decision whether to

8

register will not affect the amount of benefits available to the applicant. 42 U.S.C. § 1973gg-5 (a) (6) (B) (i), (ii).

**Missouri's Failure to Offer Voter Registration to Public Assistance Clients**

29. DSS, through a subunit, the Family Support Division ("FSD"), is responsible for administering several public assistance programs that must comply with Section 7 of the NVRA, including federal Food Stamps, Medicaid, rehabilitation programs for the blind, MO HealthNet and the TANF income assistance program.

30. DSS, through the FSD, administers its programs through offices located in each county and the City of St. Louis. DSS responsibility and authority is centralized in the Director. Employees of DSS offices are state employees subject to the supervision and control of the Director of DSS, Defendant Scott, and/or her agents, including without limitation, Defendant Luck.

31. In recent years Missouri's DSS offices have failed, and continue to fail, to provide the voter registration opportunities mandated by Section 7.

32. The following table accurately indicates the number of voter registration applications processed by public assistance agencies, DSS and Department of Health and Senior Services ("DHSS"), in Missouri since initial implementation of the NVRA.

|  | 1995-1996 | 1997-1998 | 1999-2000 | 2001-2002 | 2003-2004 | 2005-2006 |
| --- | --- | --- | --- | --- | --- | --- |
| **DSS and DHSS Voter Registrations** | 143,135 | 68,475 | 51,951 | 34,923 | 17,637 | 15,568 |

33. The number of voter registrations from these two public assistance agencies has steadily declined despite an overall increase in participation in the Food Stamps Program, one of the most widely used public assistance programs covered by the

9

NVRA, between 1995 and 2006. In contrast, the number of voter registrations from the Department of Motor Vehicles has remained relatively constant during that same period.

34. As reported by the DSS, the average monthly number of households receiving Food Stamps through applications at the DSS has increased from 238,699 households in FY1995 to 300,498 households in FY 2006.

35. In 2005-2006, as reported by the Missouri Secretary of State ("SOS"), the total number of voter registrations received from public assistance agencies in all of Jackson County, including those areas that are part of Kansas City was only 364 (Jackson County BOE received 256 and the Kansas City BOE received 108), an average of 15 voter registrations per month.

36. DSS reported an average of 56,078 applications for Food Stamps received by the DSS *each month* in Missouri in fiscal years 2005 and 2006. In Jackson County, the DSS reported having received an average of 7,575 applications for Food Stamps each month in fiscal years 2005 and 2006.

37. Thus, in fiscal years 2005 and 2006 the DSS received more than 1.3 million Food Stamps applications state wide and 181,800 Food Stamps applications in Jackson County.

38. In fiscal years 2005 and 2006, the DSS reported an average of 8,332 Food Stamps applications received per month in St. Louis City.

39. In 2005 and 2006, as reported by the SOS, the St. Louis City BOE received 2,776 voter registrations, an average of 116 per month.

40. Plaintiff O'Neal has received public assistance in the form of Food Stamps since 1993, and in connection therewith, has visited the DSS offices at Prince Hall

10

Family, 4411 N. Newstead Avenue in St. Louis every six months to recertify or renew her benefits.

41.     Plaintiff O'Neal last visited the above-referenced DSS offices to recertify for public assistance benefits in spring of 2007.  On that occasion, and at each of her prior visits to that office, no one from the DSS asked if she was registered to vote or if she wanted to apply to register to vote; she was not given any document that asked if she was registered to vote, whether she needed to update her voter registration for her current address, or whether she would like to apply to register to vote at the DSS office that day.  On that occasion and each prior occasion, neither the DSS employee who assisted her nor any other DSS employee offered to give her a voter registration application.

42.     Plaintiff O'Neal is not registered to vote at her current address, and would like to register at her current address.  She meets all of the qualifications to register and would like to register to vote.

43.     Within the past year ACORN staff have conducted numerous interviews of clients exiting Missouri DSS offices at offices in four of the largest counties or cities in Missouri:  Jackson and Clay (Kansas City), St. Louis City and St. Louis County. Almost none of the clients conducting transactions that triggered the NVRA's voter registration requirements reported being offered the opportunity to register to vote.  Three of the DSS offices visited did not even have voter registration applications available on site.

44.     On August 23, 2007, counsel for Plaintiff ACORN sent a letter to Defendant Scott, in her official capacity as Director of DSS, providing written notice of the NVRA violation.  In compliance with the notice requirements set forth at 42 U.S.C. sec. 1973gg-9, Plaintiffs provided a copy of this letter to Missouri's chief elections

11

officer. The letter stated that in the absence of a plan to remedy DSS's failures to implement the NVRA, ACORN would have no choice but to commence litigation. Copies of the August 23 letter to Defendant Scott and the letter transmitting a copy to the Secretary of State, Missouri's chief elections officer, are annexed hereto as Exhibit A. In an October 11, 2007 letter, Defendant Scott acknowledged receipt of the August 23 letter. A copy of Defendant Scott's October 11, 2007 letter is annexed hereto as Exhibit B.

45. Notwithstanding the repeated attempts to secure Defendants' compliance with Section 7 of the NVRA, persons applying for public assistance in Missouri, including the individual Plaintiff as well as ACORN members who receive public assistance, are not being offered the opportunity to register to vote that federal law requires.

46. Defendants are responsible for assuring public assistance agency compliance with Section 7 of the NVRA within their respective jurisdictions.

47. Defendants have failed to carry out their responsibilities to prevent and correct the violations described in this complaint.

### How Defendants' Lack of Compliance Impacts ACORN's Voter Registration Efforts

48. As a means of building stronger communities, ACORN has been a strong advocate for voter participation. More registered voters in a community served by ACORN means that ACORN can encourage more people to vote on Election Day and generate a higher amount of voters, all of which strengthens the community. Members of ACORN who are registered to vote have an interest in other members of their community being registered to vote. Although ACORN encourages its members to register to vote, not all of its members are registered. As members of an organization devoted to

12

organizing low and moderate-income families, many of ACORN's members receive public assistance and would benefit from being offered the opportunity to register to vote during visits to DSS offices to apply and/or recertify their eligibility for public assistance.

49. Low income families in general tend to change their residences more frequently than wealthier families. ACORN has members who have applied for public assistance and were not registered to vote or who have moved since registering to vote and have not updated their voter registration addresses, but who would update their voter registration address at DSS offices if given that opportunity. ACORN has had to expend funds to register members who were not offered the opportunity to register when they went to DSS offices.

50. ACORN seeks to increase political participation in the communities it serves. As part of those efforts ACORN regularly conducts voter registration drives in St Louis Metro Area, Kansas City, and Springfield, Missouri. As the result of Defendants' ongoing violation of the NVRA, Plaintiff ACORN and its members have been forced to devote a significant portion of their limited time and resources to conducting voter registration outreach to the clients of Missouri public assistance agencies who should be offered the opportunity to register by DSS offices. Those voter registration efforts specifically include, among other things, collecting voter registration applications outside of DSS offices from individuals who were not offered the opportunity to register to vote or to update their voter registration information during visits to the offices.

51. ACORN has spent hundreds of thousands of dollars on voter registration activities in the state of Missouri. ACORN employees or volunteers have participated in voter registration efforts outside of public assistance agencies because Defendants have

13

failed to provide the required voter registration opportunities. ACORN would not have spent time, money and resources attempting to register to vote individuals leaving DSS offices had those offices offered the individuals applying or recertifying their eligibility for benefits the opportunity to register to vote or update their voter registration information during their visits to the DSS offices.

52. Defendants' violations thus have hampered and impeded ACORN's mission, required ACORN to expend resources it would not otherwise have expended, and diverted resources needed for community organization, issues campaigns, and other programs for full achievement of its goals.

53. As the result of Defendants' ongoing violation of the NVRA, Plaintiff ACORN's members who apply or recertify eligibility for public assistance benefits are not being advised that they are able to register to vote at that time. Consequently, Defendants are not providing ACORN members the opportunity to register to vote as required by Section 7 of the NVRA, thus depriving them of exercising their rights to vote and of a voice in government.

**Claim for Relief**

**(Violation of Section 7 of the National Voter Registration Act of 1993)**

54. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 53 as if fully set forth herein.

55. Because of the failure to provide the voter information and registration opportunities and assistance required by Section 7 of the NVRA, the Defendants have violated and continue to violate the NVRA.

56. Plaintiffs have been aggrieved by this violation of the NVRA and have no adequate remedy at law for the Defendants' violation of their rights. Declaratory and injunctive relief is required to remedy the Defendants' violations of the NVRA and to secure ongoing compliance with the NVRA.

## Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order:

(i) Declaring, pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1973gg-9(B)(2), that the Defendants have violated Section 7 of the NVRA, 42 U.S.C. §1973gg-5, by failing to provide voter registration services as required by the NVRA at agencies that provide public assistance, including the Missouri Department of Social Services;

(ii) preliminarily and permanently enjoining the Defendants, their agents and successors in office and all persons working in concert with them pursuant to 42 U.S.C. § 1973gg-9(B)(2), from implementing practices and procedures that violate Section 7 of the NVRA, 42 U.S.C. §1973gg-5;

(iii) directing the Defendants, under a court-approved plan with appropriate reporting and monitoring requirements, to take all appropriate measures necessary to remedy the harm caused by their non-compliance with Section 7 of the NVRA, including, without limitation, ensuring that individuals affected by the Defendants' non-compliance with Section 7 of the NVRA are provided immediate opportunities to register to vote or change their voter registration addresses;

(iv) directing the Defendants, under a court-approved plan with appropriate reporting and monitoring requirements, to take all steps necessary to ensure

15

ongoing compliance with the requirements of Section 7 of the NVRA, 42 U.S.C. § 1973 gg-5, including, without limitation, training and monitoring personnel to ensure that designated agencies are making voter registration materials available, inquiring of all applicants, in writing, whether they would like to register to vote or change their voter registration addresses, assisting applicants in completing the voter registration applications, and providing other voter registration services and assistance as required by the NVRA;

(v) awarding the Plaintiffs the cost and disbursements incurred in connection with this action, including, without limitation, reasonable attorneys fees and costs pursuant to 42 U.S.C. § 1973gg-9(c).

(vi) retaining jurisdiction over this action to ensure that the Defendants are complying with their obligations under the NVRA; and

(vii) awarding such other equitable and further relief as the Court deems just and proper.

Dated: April 23, 2008

ARTHUR BENSON & ASSOCIATES

By:_____
Arthur A. Benson II  Mo. Bar #21107
Jamie Kathryn Lansford  Mo. Bar #31133
4006 Central Avenue (Courier Zip: 64111)
P.O. Box 119007
Kansas City, Missouri 64171-9007
Telephone:  (816) 531-6565
Telefax:  (816) 531-6688
Email: abenson@bensonlaw.com

16

Email: jlansford@bensonlaw.com

DEWEY & LEBOEUF LLP
John M. Nonna
Richard J. Cairns
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Telefax: (212) 259-6333
Email: jnonna@dl.com
Email: rcairns@dl.com
PRO HAC VICE APPLICATIONS TO BE
FILED

LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
Jon Greenbaum
Bob Kengle
Carlean Ponder
1401 New York Avenue, N.W., Suite 400
Washington, DC 20005
Telephone: (202) 662-8315
Telefax: (202) 628-2858
Email: jgreenbaum@lawyerscommittee.org
Email: bkengle@lawyerscommittee.org
Email: cponder@lawyerscommittee.org
PRO HAC VICE APPLICATIONS TO BE
FILED

DEMOS: A NETWORK OF IDEAS &
ACTION
Brenda Wright
358 Chestnut Hill Avenue
Suite 303
Brighton, MA 02135
Telephone: (617) 232-5885 ext. 13
Telefax: (617) 232-7251
bwright@demos.org

Allegra Chapman
220 Fifth Avenue, 5th Floor
New York, NY 10001
Telephone: (212) 419-8772
Telefax: (212) 633-2015
achapman@demos.org

PRO HAC VICE APPLICATIONS TO BE FILED

PROJECT VOTE
Brian Mellor
Teresa James
196 Adams Street
Dorchester MA 02122
Telephone:  (617) 282-3666
Telefax:  (617) 507-6402
Email:  electioncounsel1@projectvote.org]
Email:  electioncounsel2@projectvote.org]
PRO HAC VICE APPLICATIONS TO BE FILED

ATTORNEYS FOR PLAINTIFFS