**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW et al., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 08-CV-4084-NKL |
| DEBORAH E. SCOTT, et al., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Pending before the Court are Defendants' Motions to Dismiss [Doc. ## 38, 39, 42, 44]. For the reasons given herein, the motions are DENIED.

**I.     Background**

On August 23, 2007, Plaintiffs Association of Community Organizations for Reform Now ("ACORN") sent a letter to Missouri Secretary of State Robin Carnahan ("Carnahan") and Director of Missouri's Department of Social Services ("DSS") Deborah E. Scott ("Scott") that DSS was in violation of Section 7 of the National Voter Registration Act for failing to provide certain voter registration materials and services at public assistance agencies in Missouri.  Carnahan had previously expressed concern with DSS's compliance before ACORN's August 23, 2007 letter, most recently March 29,

1

2007. On October 11, 2007, Scott responded to ACORN's letter attributing declining registration numbers in Missouri's public agencies to increased use of on-line services. (Compl. Ex. B).

In spring 2007, Dionne O'Neal ("O'Neal"), a resident of St. Louis - who is eligible for public assistance, meets all qualifications to vote but is not registered to vote - visited a DSS office to re-certify for public assistance benefits. (Compl. ¶41). On that and other occasions, no one from DSS asked if she was registered to vote or if she wanted to apply to register to vote; she was not given any document that asked if she was registered to vote, whether she needed to update her voter registration for her current address, or whether she would like to apply to register to vote at the DSS office on that day. On that occasion and each prior occasion, neither the DSS employee who assisted her nor any other DSS employee offered to give her a voter registration application.

On April 23, 2008, ACORN and O'Neal filed a complaint against Scott, Janel Luck ("Luck"), the director of the Family Support Division of the Missouri Department of Social Services, as well as the Jackson County, Kansas City and St. Louis City Election Boards. (Compl. ¶¶ 11, 12). ACORN and O'Neal seek declaratory and injunctive relief to secure DSS's compliance with the NVRA. (Compl. ¶ 56).

Elections in Missouri are administered by 116 local election authorities, three of which - Jackson County, Kansas City and St. Louis - are also defendants in this action. *See United States v. Missouri*, 2007 U.S. Dist. LEXIS 27640 (W.D. Mo. 2007)
2

Case 2:08-cv-04084-NKL   Document 93   Filed 07/07/08   Page 2 of 11

2007. On October 11, 2007, Scott responded to ACORN's letter attributing declining registration numbers in Missouri's public agencies to increased use of on-line services. (Compl. Ex. B).

In spring 2007, Dionne O'Neal ("O'Neal"), a resident of St. Louis - who is eligible for public assistance, meets all qualifications to vote but is not registered to vote - visited a DSS office to re-certify for public assistance benefits. (Compl. ¶41). On that and other occasions, no one from DSS asked if she was registered to vote or if she wanted to apply to register to vote; she was not given any document that asked if she was registered to vote, whether she needed to update her voter registration for her current address, or whether she would like to apply to register to vote at the DSS office on that day. On that occasion and each prior occasion, neither the DSS employee who assisted her nor any other DSS employee offered to give her a voter registration application.

On April 23, 2008, ACORN and O'Neal filed a complaint against Scott, Janel Luck ("Luck"), the director of the Family Support Division of the Missouri Department of Social Services, as well as the Jackson County, Kansas City and St. Louis City Election Boards. (Compl. ¶¶ 11, 12). ACORN and O'Neal seek declaratory and injunctive relief to secure DSS's compliance with the NVRA. (Compl. ¶ 56).

Elections in Missouri are administered by 116 local election authorities, three of which - Jackson County, Kansas City and St. Louis - are also defendants in this action. *See United States v. Missouri*, 2007 U.S. Dist. LEXIS 27640 (W.D. Mo. 2007)

(describing local election authorities' role in Missouri elections).[1] ACORN and O'Neal allege that the local election authorities have failed to fulfill their obligations under NVRA and Missouri-implementing statutes to "instruct and direct" deputy registration officials and mandated state agencies like DSS in their duties. Mo. Rev. Stat. § 115.145.2. The local election authorities seek dismissal because 1) ACORN and O'Neal failed to give proper notice under 42 U.S.C. § 1973gg-9 and 2) they have no authority over DSS's voter registration activities. Scott and Luck independently allege that O'Neal failed to provide proper notice under 42 U.S.C. § 1973gg-9.

## II. Standing

The St. Louis Election Board alone challenges ACORN's standing to bring this action. An association satisfies the Article III standing requirements to sue in its own right when it meets the same standing test applicable to individuals. *See Oti Kaga, Inc. v. S.D. Hous. Dev. Auth.* 342 F.3d 871, 881 (8th Cir. 2003) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982)). In order to meet Article III standing requirements, a plaintiff must show that it has suffered an injury or the imminent threat thereof; that the injury is "fairly traceable" to the defendant's actions; and that the injury

---

[1] Both parties seek support from this Court's decision in *United States v. Missouri*. The case is factually and procedurally unpersuasive, but entirely consistent with this Order. In that case, the U.S. Government sued the Missouri Secretary of State for failing to "conduct a general program" to make a "reasonable effort" to comply with Section 8 of the NVRA. In concluding that the Secretary of State had met her obligation, this Court pointed to the availability of direct actions by local prosecutors and the U.S. Government against local election authorities for any violations of the NVRA. Here, ACORN and O'Neal are suing the local election authorities, not the Secretary of State, for alleged violations of Section 7 of the NVRA. Both Congress and the Missouri legislature vested private parties with a private right of action to do so.

3

or threat thereof is likely redressable by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

ACORN's suit is not, as the St. Louis Election Board alleges, in pursuit of "abstract social interests." ACORN has alleged that the State of Missouri has failed to provide voter registration opportunities at the offices of public service agencies as required by the NVRA and Missouri law. (Compl. ¶ 6). That failure has caused harm to O'Neal, an ACORN member and St. Louis resident, and numerous ACORN members by denying them opportunities to register to vote. (Compl. ¶¶ 8, 12). Because O'Neal's injury is concrete, traceable to DSS's and the St. Louis Election Board's alleged failure and capable of redress through this Court; and, her injury is germane to ACORN's purpose, ACORN has standing to bring this action. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 181 (2000) ("In contrast, the affidavits and testimony . . . and the affiant members' reasonable concerns about the effects of [environmental pollution], directly affected those affiants' recreational, aesthetic, and economic interests.").

## III. Discussion

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Additionally, the Court must accept "the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta,* 410 F.3d 1036, 1039 (8th Cir. 2005). A motion to dismiss must be granted if the

4

Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007).[2]

### A.     1993 National Voter Registration Act

In 1993, Congress enacted the National Voter Registration Act ("NVRA"). 42 U.S.C. § 1973gg-2 to § 1973gg-9. The NVRA provides, in relevant part, that each state must designate all offices in the state that provide public assistance as voter registration agencies. These public assistance agencies must: (1) distribute voter registration applications to applicants; (2) offer applicants assistance in completing the forms unless the applicants refuse such assistance; and (3) accept completed forms for transmittal to the appropriate state election official. 42 U.S.C. § 1973gg-5(a)(4)(A). Voter registration applications must be distributed with each application for public assistance and/or disability services and with each re-certification, renewal, or change-of-address form relating to such service or assistance unless the applicant, in writing, declines to register to vote. 42 U.S.C. § 1973gg-5(a)(6)(A).

Each state is to designate a state officer or employee as the chief state election official to be responsible for coordination of state responsibilities under the NVRA. 42 U.S.C. §1973gg-8. Missouri has designated the Secretary of State as the chief election official for the state. Mo. Rev. Stat. §115.136. Section 115.136.7 of the Missouri statutes

---

[2] The Defendants alternatively style their motions for judgment on the pleadings. The standard of review is the same and the Court will treat the petitions as motions brought under Fed. R. Civ. P. 12(b)(6) and 12(c). *See Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990)).

5

specifically provides that, "[a]ny person who is aggrieved by a violation of the National Voter Registration Act may provide written notice of the violation to the secretary of state and may bring a civil action pursuant to the process prescribed by section 11 of the National Voter Registration Act of 1993." In addition, Section 115.136 requires the Secretary of State to supply each election authority with a list of all public assistance agencies and armed forces recruitment offices that are designated as voter registration sites within the jurisdiction of the election authority. In order to assist in implementing Section 7 of the NVRA, the Election Division of the Secretary of State's office prepared and promulgated an NVRA implementation guide for state agencies - National Voter Registration Act - 1993: Implementation Guide for Missouri Public Assistance Agencies ("NVRA Implementation Guide").

### B. ACORN and O'Neal Have Provided Sufficient Notice Under the NVRA

In their motion to dismiss, Scott and Luck claim that O'Neal never provided personal notice to the Secretary of State that Scott, Luck or any other DSS official was failing to comply with the NVRA. Similarly, the Jackson County, Kansas City and St. Louis Election Boards argue that O'Neal's and ACORN's complaints should be dismissed because ACORN's August 23, 2007 letter did not inform Carnahan that the local election authorities were in violation of the NVRA. Scott alternatively argues that ACORN's August 23, 2007 letter did not allege a violation of Section 7 of the NVRA with sufficient specificity.

Section 11 of the NVRA provides, in relevant part:

6

> (b) Private right of action
> (1) A person who is aggrieved by a violation of this subchapter may provide written notice of the violation to the chief election official of the State involved.
> (2) If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), . . . the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation. 42 U.S.C. § 1973gg-9(b)(1),(2).

There is no dispute that ACORN provided Carnahan and Scott notice of violation of the NVRA as early as August 23, 2007. There is also no dispute that this action was brought after the statutory 90-day remedial period. Scott's argument, that O'Neal must provide notice individually despite being an ACORN member, has been rejected by the only appellate court to seriously consider the issue. *ACORN v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997) (characterizing as futile the act of non-ACORN plaintiffs giving notice when Michigan already had actual notice from ACORN).

ACORN and O'Neal did not provide Carnahan notice that the local election authorities were in violation of the NVRA. However, ACORN's August 23, 2007 letter requested Carnahan to notify "any additional state or local entities that have a role in implementing Section 7 of the NVRA." (Compl. Ex. A, 2). Moreover, the notice statute only requires the aggrieved party to inform the state chief election official of the *violation*, not of the specific agency or agencies which may play a part in the violation. 42 U.S.C. § 1973gg-9(b)(1),(2) (emphasis added). Even if the Court did not adopt this reading of the statute, requiring Plaintiffs to now provide notice would also be futile. The purpose of the NVRA's notice requirement is to provide states in violation of the act an

7

opportunity to attempt compliance before facing litigation. *ACORN v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997). As their motions to dismiss clearly demonstrate, the Jackson County, Kansas City and St. Louis Election Boards take the position that they are under no duty to "instruct and direct" their deputy registration officials or state agencies in a way that would permit oversight of DSS's compliance with the NVRA. If the local election authorities expressed any desire to attempt compliance through the presumptive "remedial" period ending July 23, 2008, then their arguments would be justified. However, because the local elections authorities see no potential or actual violation of the NVRA, requiring notice would be futile. *Id*.

### C. ACORN and O'Neal Have Sufficiently Alleged Violations of the NVRA

As for the sufficiency of ACORN's August 23, 2007 notice to Scott, Luck and DSS, there are ample facts alleged to survive a motion to dismiss. ACORN's letter to Scott and Carnahan provided evidence demonstrating violations, including an eight-page report summarizing ACORN's fact-gathering methods and findings. The Court must accept as true ACORN's allegations that DSS employees failed to provide voter registration applications with each application, re-certification, and change of address. Some DSS sites could not provide registration materials even when specifically requested. These are clear violations of the NVRA. *See* 42 U.S.C. § 1973gg-5(a)(4)(A).

Local election authorities have the discretion to appoint deputy registration officials to work on behalf of the election authority in registering voters. Mo. Rev. Stat. §

8

115.143.[3]  A deputy registration official may be employed at a state agency. Mo. Rev. Stat. § 115.143.1.  Local election authorities are charged with a duty:

> To instruct and direct each deputy registration official in the performance of his or her duties including those agencies mandated and optional, including as optional any institution of higher education located in the state, under the National Voter Registration Act of 1993 and to supply each deputy with the proper registration forms and other necessary supplies.  Mo. Rev. Stat. § 115.145.2.

Notwithstanding the clear statutory language, the local election authorities argue that the only established connection between them and state agencies is the requirement that state agencies "send all completed voter registration forms to the proper election authority with-in five days of receipt."  (NVRA Implementation Guide, 12).  Their responsibility is to instruct and direct deputy registration officials, not DSS employees.  Finally, the local election authorities argue that the complaints against them be dismissed because the Court cannot fashion relief against them - ACORN and O'Neal request injunctive relief that can only be provided by DSS or its employees.

ACORN and O'Neal dispute the local election authorities' reading of the statute. The Missouri legislature inserted the relevant language regarding mandated and optional state agencies into Mo. Rev. Stat. § 115.145.2 by amendment in 1994, subsequent to the 1993 enactment of the NVRA.  Mo. Ann. Stat. § 115.145 Historical and Statutory Notes

---

[3]  The local election authorities argue that, because appointment of deputy registration officials is discretionary, acts that flow from the deputy registration officials must also be discretionary.  That interpretation is plainly against the statutory framework which provides that local election authorities' discretion is limited to the act of appointment; once a deputy registration official is appointed, his or her duties are prescribed by law.  See Mo. Rev. Stat. §§ 115.132.2, 115.151.1.

9

(West 2008). Under ACORN's theory, pursuant to this 1994 amendment to Missouri law establishing procedures to implement the NVRA as the federal law mandates, local election authorities have the duties of instructing and directing agencies mandated under the NVRA in the performance of their duties. *See* 42 U.S.C. § 1973gg (b)(2); 42 U.S.C. § 1973gg-2(a)(3)(B).

A plain reading of the statute, supported by the legislative history, shows that the Missouri legislature specifically ordered local election authorities to "instruct and direct" deputy registration officials and mandated agencies in their duties and as part of NVRA implementation. ACORN and O'Neal allege plainly and simply that the local election authorities have failed to fulfill this obligation. While the local election authorities encourage the Court to defer to the NVRA Implementation Guide, the Guide states explicitly that it does not "have the force of law." (NVRA Implementation Guide, 2). The relief requested - that the local election authorities instruct and direct state agencies as required by law - can be provided by the local election authorities. Whatever the local election authorities perspective on their "control" over DSS or their "ability to enforce DSS's compliance" with the NVRA, there is no serious dispute that the Missouri legislature imposed a duty upon them, and the face of the complaint sufficiently alleges that they have failed to fulfill it. (Doc. 40, 12).

Accordingly, it is hereby

ORDERED that Defendants' Motions to Dismiss [Doc. ## 38, 39, 42, 44] are DENIED.

10

Case 2:08-cv-04084-NKL   Document 93   Filed 07/07/08   Page 10 of 11

s/ Nanette K. Laughrey
                                                         NANETTE K. LAUGHREY
                                                         United States District Judge

Dated: July 7, 2008
Jefferson City, Missouri